UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES F. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-02150-SEB-TAB |
| | ) | |
| ANDERSON COMMUNITY SCHOOL CORPORATION, | ) | |
| JOSEPH CRONK, Individually and in His Official Capacity as Director of Operations for the Anderson Community School Corporation, | ) | |
| NANCY FARLEY, Individually and in Her Former Official Capacity as Director of Transportation for the Anderson Community School Corporation, | ) | |
| MARY ANN HEINEMAN, Individually and in Her Official Capacity as Assistant Director of Transportation for the Anderson Community School Corporation, | ) | |
| BOARD OF SCHOOL TRUSTEES OF THE ANDERSON COMMUNITY SCHOOL CORPORATION, Individually and in Their Official Capacities, | ) | |
| Defendants. | | |

**MEMORANDUM ORDER**

Plaintiff Charles F. Jones ("Jones") brought this employment discrimination action under 42 U.S.C § 1983 against the Anderson Community School Corporation ("the School"), its Board of Trustees ("the Board"), and three of its employees ("the

Employees"), all in their individual and official capacities ("Defendants").[1] Before the Court is Defendants' motion to dismiss the official-capacity claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

## Facts and Procedural History

With its allegations taken as true, Jones's complaint reveals the following. Jones is a teacher and school administrator holding associate's, bachelor's, and master's degrees in education and administration. Pl.'s Am. Compl. ¶¶ 26–27. Jones serves or has served as the principal and transportation director for the Delaware Christian Academy, and also works or has worked for the public schools of Muncie, Indiana. *Id.* ¶ 27. He is also a school-bus driver. *Id.* ¶ 13. Jones is black. *Id.*

In 2005, Jones was hired by the School as an independent contractor to drive school buses in Anderson, Indiana. *Id.* ¶¶ 9, 13. For the 2006–2007 school year, Jones applied to be a "Fleet Operator" for the School, one of "four or five" contractors "which operate multiple school busses." *Id.* ¶ 14. Jones's application was rejected in favor of a white contractor's. *Id.* ¶ 15.

Every year from then on until before or during the 2015–2016 school year, when Jones left the School, Jones applied to be a fleet operator. *Id.* ¶¶ 14, 30. Every year his application was denied, *id.* ¶ 15, despite Jones's "perfect safety record" during his ten-

---

[1] Defendants moved separately to dismiss the individual-capacity claims under Rule 12(b)(5), Fed. R. Civ. P., on March 3, 2017. Dkt. 38. That motion is disposed of in Defendants' favor by separate Order issued simultaneously to this ruling.

year tenure. *Id.* ¶ 19. Every new fleet-operator contract was awarded to white or white-owned contractors, the majority of which were formed after Jones began driving for the School. *Id.* ¶¶ 15, 16. One such contractor, at the time its fleet-operator contract was awarded, had "recently been cited for safety violations by the Indiana State Police." *Id.* ¶ 19. "When Jones inquired about this [hiring pattern], he was told that 'seniority and performance are not factors in awarding contracts.'" *Id.* ¶ 17. When Jones asked what factors were used in awarding contracts, he received no answer. *Id.*

In 2011, Jones was assigned a new bus route. *Id.* ¶ 18. His old route served primarily white students; his new route served primarily black students. *Id.* When Jones inquired about the reason for his reassignment, he was told it was because he could "handle those kids better." *Id.* Jones's old route was reassigned to a white bus driver. *Id.* Jones believed this reassignment was retaliatory for his "repeated[] complain[ts]" to the Board about being subjected to race and sex discrimination. *Id.* ¶¶ 31, 58.

In late 2014, the School had an opening for a new Transportation Supervisor. *Id.* ¶ 22. The School published the opening in early 2015, but not on its own website. *Id.* ¶¶ 22, 23. Jones heard of the opening through his work at another school and applied. *Id.* ¶ 22. In April 2015, Jones was scheduled to interview for the position, but the interview was canceled the night before for "budgetary reasons." *Id.* ¶ 24. The Transportation Supervisor position apparently was never filled and was later abolished. *See id.* ¶¶ 24, 25.

Instead, in May 2015, the School created a new position, Assistant Director of Transportation, for which the School hired Mary Ann Heineman ("Heineman"). *Id.* ¶ 25. Heineman is a white woman with "no college degree, no teaching or other education

credentials, and no prior transportation management experience." *Id.* The opening for the position of Assistant Director of Transportation "was never posted in [the School] district." *Id.*

In addition to Jones's applications for a fleet-operator contract and for the Transportation Supervisor position during the 2014–2015 school year, Jones applied for a position as the School's Human Resources Director. *Id.* ¶ 28. That application was rejected as well, making three rejections for him during that school year. *Id.*

Before the 2015–2016 school year began, "Jones learned that Heineman had changed Jones's individual [driver] contract in such a way that he would be paid $1,000 per month less than he had been paid the year before." *Id.* ¶ 30 (emphasis omitted). Again Jones believed this reduction in pay to have been retaliatory for his complaints to the Board. *Id.* ¶ 59. In any event, Jones found the new pay rate intolerable and "was compelled" to give up his driver's contract. *Id.* ¶ 30.

When Jones left the School, he was the last nonwhite contractor there. *Id.* After awarding Jones his first driver's contract in 2005, the School never thereafter awarded a driver's contract to a nonwhite contractor. *Id.* ¶¶ 15, 21. Jones believes that no fleet-operator contract has been awarded to a nonwhite contractor since 1989. *Id.* ¶ 21. Though the School district is 40 percent nonwhite, its "Central Administration" is entirely white, as are all but one principal in the district. *Id.* ¶ 32.

Jones brought the instant action in this Court on August 11, 2016. Dkt. 1. After Defendants answered and moved for partial judgment on the pleadings, Dkt. 8, 12, Jones filed an amended complaint on November 28, 2016. Dkt 14. The amended complaint

pleads for relief for unlawful discrimination on the bases of race and sex under the Equal Protection Clause of the Fourteenth Amendment, Pl.'s Am. Compl. ¶ 2, and for unlawful retaliation, ¶¶ 58–59, a claim we construe as arising under the First Amendment.

Jones seeks to hold Defendants liable as follows: Count One, for race and sex discrimination in the awarding of fleet-operator contracts from the 2006–2007 school year through the 2014–2015 school year; Count Two, for race and sex discrimination in rejecting Jones's 2015 application for the Transportation Supervisor position and hiring Heineman for its successor position; Count Three, for race discrimination in the 2011 route reassignment; and Count Four, for retaliation in the 2011 route reassignment and in the 2015 pay reduction. Count Five pleads the School's municipal liability for Counts One through Four.

Defendants moved to dismiss the official-capacity claims on January 3, 2017. Dkt. 23. Jones failed to respond to that motion, and it is therefore considered unopposed.

## Standard of Decision

"A pleading that states a claim to relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "test[s] the legal sufficiency of a complaint." *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *abrogated on other grounds by Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996). To survive dismissal,

> a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009). Factual allegations are accepted as true at the pleading stage, but "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir.2012) (citing *Iqbal,* 556 U.S. at 678). . . . "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" [*Iqbal,* 556 U.S. at 678] (quoting *Twombly,* 550 U.S. at 557) . . . .

*Adams*, 742 F.3d at 728.

Where, as here, the deadline for amending a complaint as of right has passed, Fed. R. Civ. P. 15(a)(1)(B), further amendment requires leave of court or the defendants' consent. *Id.* at (a)(2). "Although leave to file a second amended complaint should be granted liberally, a district court may deny leave for several reasons including . . . futility of amendment." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (quotations omitted); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## Analysis

Defendants contend that all of Jones's official-capacity claims are subject to dismissal because, first, Jones's claims against the Board and the Employees are duplicative of Jones's claims against the School; second, the applicable statute of

limitations bars several of Jones's claims against the School; third and finally, Jones's remaining claims are insufficiently pled.

## I. Redundancy of Official-Capacity Claims Against the Board and the Employees

It is well settled that a suit against a government agent in her official capacity is a suit against the office itself or the unit of government to which the office belongs. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, where the governmental unit is a named defendant, official-capacity claims against agents of that unit are redundant.

Here, the School is the relevant unit of government. The official-capacity claims against the Board and the Employees are thus claims against the School. Because the School is a named defendant, the official-capacity claims are duplicative. Defendants contend that the official-capacity claims are subject to dismissal on that ground. *See Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1074 n.2 (N.D. Ill. 2013) (dismissing official-capacity claims where governmental unit named defendant; collecting cases reaching same result).

We agree. Particularly as the individual-capacity claims have been dismissed on Defendants' separate motion, Dkt. 38, there is no reason to keep the Board and the Employees in this case in their official capacities. Defendants' motion is therefore granted as to the Board and the Employees in their official capacities. Because no amendment could cure the redundancy, dismissal is with prejudice.

## II. Statute of Limitations

"While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth every necessary to satisfy" the limitations defense "because the relevant dates are set forth unambiguously in the complaint." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quotations and citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").

Section 1983 actions borrow the limitations period for personal-injury actions under the law of the state in which the actions arose. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). In Indiana, that period is two years. *Id.* (citing Ind. Code § 34-11-2-4). Jones filed his initial complaint on August 11, 2016. Dkt. 1. Thus, any claim that appears unambiguously to have accrued two years before that date is subject to dismissal.

The following claims are barred by the statute of limitations: Count One, for race and sex discrimination as to all fleet-operator contracts before the 2014–2015 school year; Count Three, accruing in 2011; and Count Four, for retaliation as to the 2011 route reassignment, accruing in 2011. Because amendment would be futile, these dismissals are with prejudice.

The claim under Count One for race and sex discrimination as to the fleet-operator contract for the 2014–2015 school year does not unambiguously appear from the face of the complaint to have accrued before August 11, 2014, and is therefore not subject to

dismissal at this stage. The facts underlying the claim in Count Two all arose after August 2014. *See* Pl's Am. Compl. ¶ 22. The facts underlying the claim under Count Four for retaliation as to the 2015 pay reduction arose after August 2014. These claims therefore accrued within the limitations period and survive dismissal on that basis.

**III. Plausibility of *Monell* Claims**

A municipality (or any other unit of local government, like a school district, *see, e.g., Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701 (1989)) may be liable for constitutional injuries caused by its policies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

We turn first to Jones's equal protection claim for racial discrimination, then to his equal protection claim for sex discrimination and his First Amendment retaliation claim.

A. Equal Protection: Race

We first address the issue of whether Jones has adequately pleaded constitutional injury, then whether Jones has adequately pled a municipal policy causing such injury.

1. *Constitutional Injury*

The Equal Protection Clause of the Fourteenth Amendment "prohibits intentional [invidious] discrimination based on membership in a particular class, including acts of employment discrimination." *Trigg v. Fort Wayne Comm. Schs.*, 766 F.2d 299, 300 (7th Cir. 1985) (citing *Davis v. Passman*, 442 U.S. 228, 234–35 (1979)). In the public-employment context, equal protection claims under Section 1983 are analyzed like disparate treatment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. McCauley v. City of Chicago*, 671 F.3d 611, 615–16 (7th Cir. 2011). "[T]he same standards for proving intentional discrimination apply to Title VII and § 1983 equal

protection[,]" *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003), though a number of the Seventh Circuit's cases have required a separate showing of invidious discriminatory intent apart from the rebuttable presumption of discriminatory intent established by a *prima facie* case under Title VII. *Id.* (citing cases).

Without direct evidence of discriminatory intent, an equal protection plaintiff may proceed under the burden-shifting method of indirect proof established by *McDonell Douglas v. Green*, 411 U.S. 792 (1973). *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1029 (7th Cir. 2003). Under this method, a plaintiff must establish a *prima facie* case of discrimination. *Id.* at 1030. The burden of production then shifts to the employer to produce a nondiscriminatory reason for its conduct. *Id.* The burden then returns to the plaintiff to show that the employer's reason was pretextual. *Id.* The plaintiff's complaint need plead only the *prima facie* case. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

We analogize Jones's claims to failure-to-hire claims under Title VII. For a failure-to-hire claim, the elements of the plaintiff's *prima facie* case are

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications, or that the position was filled with a person not in the protected class.

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002) (quotations and citations omitted).

Here, element (i) is plausibly satisfied by Jones's allegation that he is black. Pl.'s Am. Compl. ¶ 13. Element (ii) is plausibly satisfied by Jones's allegations that he applied for a fleet-operator contract for the 2014–2015 school year, *id.* ¶ 28, for which his prior experience, including an unblemished safety record as a driver, qualified him, *id.* ¶ 15, 19, 28; and that he applied for the Transportation Supervisor position in 2015, *id.* ¶ 22, for which his experience and education, including two degrees in administration and two degrees in education, qualified him. *Id.* ¶ 24, 26–28. Element (iii) is plausibly satisfied by Jones's allegations that both of these applications were rejected. *Id.* ¶ 28. Element (iv) is plausibly satisfied by Jones's allegations that all fleet-operator contracts were awarded to white contractors, *id.* ¶¶ 15, 19, 21; and that a white woman was hired as the School's Assistant Director of Transportation, the newly created successor position to the Transportation Supervisor position abolished after Jones applied for it but before he could interview for it. *Id.* ¶¶ 22–25. Thus, we conclude that Jones has plausibly pled a *prima facie* case of race-based employment discrimination, raising an inference of discriminatory intent.

Still, "[w]here the claim is invidious discrimination in contravention" of equal protection guarantees, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), a court at the pleading stage must take special care that the complaint is not "merely consistent" with purposeful discrimination, *id.* at 678 (quotations omitted), but "nudge[s]" the plaintiff's claims "across the line" from possible to plausible, *id.* at 680 (quotations omitted), by rejecting "obvious alternative explanation[s]" for the allegedly discriminatory conduct. *Id.* at 682 (quotations omitted).

The obvious alternative explanation for the School's actions is that Jones simply lost out to better qualified, though white, applicants. But this is plausibly rejected by Jones's complaint. As to the fleet-operator contracts, Jones alleges that (he was told) "seniority and performance are not factors in awarding contracts." Pl.'s Am. Compl. ¶ 17. Safety cannot be the dispositive factor either, as Jones alleges that a fleet-operator contract was awarded to a white-owned contractor "that had recently been cited for safety violations by the Indiana State Police." *Id.* ¶ 19. Even upon his inquiry, Jones was not told which factors were considered in awarding fleet-operator contracts. *Id.* ¶ 17. The plausible inference is that "the basis of the decision . . . is less likely to be *inarticulable* than *unspeakable*." *Florida v. Bostick*, 501 U.S. 429, 441 n.1 (1991) (Marshall, J., dissenting) (original emphasis). As to the Transportation Supervisor position, Jones plausibly alleges that his training and experience in education and administration better qualified him for the position than the successful applicant for its successor position, who had no relevant training and little experience. Pl.'s Am. Compl. ¶¶ 25–26. "As between th[is] obvious alternative explanation" for the School's actions "and the purposeful, invidious discrimination" Jones "asks us to infer," discrimination is a plausible conclusion. *Iqbal*, 556 U.S. at 682 (quotations omitted).

We turn next to whether Jones has plausibly pled that his constitutional injuries were caused by a policy of the School.

### 2. *Caused by Municipal Policy*

To establish municipal liability, "a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy . . . , (2) a widespread

practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (quotations and citations omitted).

Jones does not allege the existence of an express School policy of antiblack discrimination as to school-bus drivers, and pleads no facts plausibly suggesting their existence. Jones's equal protection *Monell* claim therefore cannot survive the School's motion to dismiss on the ground of an express policy.

Further, Jones does not plausibly plead that his injuries were caused by a person with final policymaking authority. "[W]hether a person has [final] policymaking authority is a question of state law, and is to be decided by the court." *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). Jones alleges that the Board is "the governing body of the [School], pursuant to [Indiana Code §] 20-23-4-27, and [is] the highest policy-making authority for the [School]." Pl.'s Am. Compl. ¶ 5; *see also id.* ¶ 63 ("Discrimination against African Americans is a policy and/or a government custom promulgated by the [Board]."). But Jones nowhere alleges that the Board or Board members did any of the allegedly discriminatory acts complained of.

Jones does not allege who decided to award fleet-operator contracts (though he suggests it was one of the Employees, Nancy Farley, then the School's Director of Transportation, *see id.* ¶ 15), or who decided not to interview Jones for the Transportation Supervisor position and to hire one of the Employees, Mary Ann Heineman, for the newly created Assistant Director of Transportation position instead. In any event, Jones does not allege that the Board made those decisions. Jones does allege that one of the

Employees decided to dock Jones's route pay before the 2015–2016 school year. *Id.* ¶ 30. "But just because [a person] is the *decisionmaker* on hiring/firing decisions for the . . . government does not necessarily make [the person] the *policymaker* on those issues." *Valentino*, 575 F.3d at 675 (original emphasis). "It is a well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.* at 676 (quotations and citations omitted). What goes for hiring and firing decisions goes for decisions to award contracts as well.

In sum, Jones identifies the Board as the final policymaking authority on the relevant issues for the School, but does not allege that the Board made the decisions complained of. Jones identifies or suggests the identity of Employees who made the decisions complained of, but does not allege them to be final policymaking authorities on the relevant issues for the School. Jones's equal protection *Monell* claim therefore cannot survive the School's motion to dismiss on the ground of the conduct of the School's final policymaking authorities.

We conclude, however, that Jones has plausibly pleaded a widespread practice of race discrimination in hiring that is so well settled as to constitute a custom having the force of law.

> The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence [in the form of an express policy], is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on

> and by failing to do anything must have encouraged or at least
> condoned, thus in either event adopting, the misconduct of
> subordinate officers. When this method of proof is used,
> proof of a single act of misconduct will not suffice; for it is
> the series that lays the premise of the system of inference.

*Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("To demonstrate that the [local government unit] is liable for a harmful custom or practice, the plaintiff must show that [government] policymakers were deliberately indifferent as to the known or obvious consequences." (quotations, citations, and alterations omitted)).

The Seventh Circuit has not "adopt[ed] any bright-line rules defining a 'widespread custom or practice." *Thomas*, 604 F.3d at 303. There is no magic number for "how frequently [unconstitutional] conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three[.]" *Id.* (quotations and citations omitted). The chief concern is that the plaintiff demonstrate "that there is a *policy* at issue rather than a random event." *Id.* (emphasis added). To this end, a plaintiff is "not required to identify every other or even one other individual who had been" a victim of the same allegedly unconstitutional treatment. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016).

Here, Jones has pleaded that he was not awarded a fleet-operator contract on nine separate occasions, at the beginning of each school year from the 2006–2007 school year to the 2014–2015 school year. Pl.'s Am. Compl. ¶¶ 14–15, 28. On each occasion, the contract went to a white contractor. *Id.* ¶ 15. Jones pleads further that he applied for three administrative positions (Transportation Supervisor, *id.* ¶ 22, Human Resources Director,

*id.* ¶ 28, and Transportation Director, *id.*). Jones was turned down for all three. In the case of the Transportation Supervisor position, its successor position went to a white woman. *Id.* ¶ 25. As the circumstances of these rejections do not appear to be meaningfully different from the 2014–2015 fleet-operator contract and the 2015 Transportation Supervisor position found plausibly unconstitutional *supra*, we conclude that Jones plausibly alleges a nearly decade-long campaign of racially discriminatory failures to hire.

The effects of this campaign are plain. Jones alleges that he was the last nonwhite contractor to be awarded a driver contract, *id.* ¶ 21, 30, and that no fleet-operator contracts have been awarded to nonwhite contractors in nearly thirty years, since 1989. *Id.* ¶ 21. The School's "Central Administration" is exclusively white, as is every school principal in the district but one. *Id.* ¶ 32. An obvious alternative explanation for this state of affairs would be that Jones was the only nonwhite applicant to apply for the respective contracts and positions during this period, but that explanation is implausible where the School's "student population" is 40 percent nonwhite. *Id.* ¶ 32.

Taking Jones's allegations as true, over the past decade and beginning as early as 1989, the School's administration and transportation workforces have gradually become monochromatic, while the minority population served by the School is nearly a majority. We conclude that Jones has plausibly alleged that the School's decisionmakers for filling administration positions and awarding driver and fleet-operator contracts consistently preferred white applicants to black applicants on the basis of their race. Jones has further plausibly alleged that the School's decisionmakers did so consistently enough that the

School's policymakers—the Board—can justifiably be thought to have winked at, acquiesced in, or affirmatively approved their decisions. And because Jones has plausibly pleaded a municipal policy of failing to hire black applicants in favor of hiring white applicants, he has plausibly pleaded that his failure-to-hire claims were caused by the School's policy.

B. Equal Protection: Sex, and First Amendment Retaliation

Jones's equal protection claim for sex discrimination and his claim for First Amendment retaliation both fail for the same reason: Jones's failure to plausibly allege a municipal policy behind them.

Even assuming the conduct complained of would rise to constitutional injury in both cases, Jones's complaint alleges only one instance of sex discrimination (the hiring of a woman for the Assistant Director of Transportation position, Pl.'s Am. Compl. ¶ 25) and only two instances of retaliation (assigning Jones a new bus route, *id.* ¶ 58, and reducing his route pay, *id.* ¶ 59). As discussed in the racial discrimination analysis above, without an express policy or the act of a final policymaker, Jones must rely on a widespread custom or practice as the basis for his *Monell* claims. *See Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). While there is no magic number for "how frequently [unconstitutional] conduct must occur to impose *Monell* liability, . . . it must be more than one instance, or even three[.]" *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Thus, Jones's allegations of one or two instances of unconstitutional conduct are insufficient to state a municipal policy under *Monell*.

## Conclusion

For the reasons above, Defendants' motion to dismiss is GRANTED as to all official-capacity claims against the Board and the Employees, which are all DISMISSED WITH PREJUDICE.

Defendants' motion to dismiss is also GRANTED as to the following claims against the School, which are all DISMISSED WITH PREJUDICE: Count One, for race and sex discrimination as to all fleet-operator contracts before the 2014–2015 school year; Count Three; and Count Four, for retaliation as to the 2011 route reassignment.

Defendants' motion to dismiss is also GRANTED as to the following claims against the School, which are both DISMISSED WITHOUT PREJUDICE: Count One, for sex discrimination as to the 2014–2015 fleet-operator contract; and Count Four, for retaliation as to the 2015 pay reduction.

Defendants' motion is DENIED as to the following claims against the School: Count One, for race discrimination as to the 2014–2015 fleet-operator contract; and Count Two. The case shall proceed accordingly.

IT IS SO ORDERED.

Date: 9/28/2017

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP
jmayes@boselaw.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP
mwohlford@boselaw.com

Jay Meisenhelder
JAY MEISENHELDER EMPLOYMENT & CIVIL RIGHTS LEGAL SERVICES PC
jaym@ecrls.com